**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GILES B. SHUCK,

*Petitioner,*

v.

CONSOLIDATION COAL COMPANY;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

*Respondents.*

No. 99-2521

On Petition for Review of an Order
of the Benefits Review Board.
(98-1182-BLA)

Argued: December 8, 2000

Decided: February 13, 2001

Before WILLIAMS and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Paggett Anderson, Princeton, West Virginia, for
Petitioner. Kathy Lynn Snyder, JACKSON & KELLY, Morgantown,
West Virginia, for Respondents. **ON BRIEF:** Mary Rich Maloy,
JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for
Respondent Consolidation Coal.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Giles Shuck seeks review of the Benefits Review Board's decision and order affirming the administrative law judge's denial of black lung benefits pursuant to 30 U.S.C.A. §§ 901 et seq. (West 1986 & Supp. 2000). Our review of the record discloses that the Board's decision is based upon substantial evidence and is without reversible error. Accordingly, we affirm the denial of Shuck's benefits.

### I.

Shuck worked for Consolidation Coal Company for forty-two years, nineteen years of which were underground and twenty-one years of which were above ground. For the last eight years of his employment with Consolidation, Shuck was a railroad car driver, which he testified required a substantial amount of climbing and heavy lifting. In January 1981, Shuck retired due to breathing problems that he had been experiencing for several years that kept him from being able to perform his required work. Shuck testified that he smoked approximately one-half a pack of cigarettes every day for approximately ten years.

On April 10, 1978, Shuck filed an application for black lung benefits. The Department of Labor notified Shuck of an initial award effective January 1982, and Consolidation appealed to an administrative law judge. On October 3, 1986, the ALJ remanded the case to the Office of the Deputy Commissioner for the parties to further develop the facts and the claims. On May 28, 1987, after the parties clarified the claims, the Department of Labor determined that Shuck was not totally disabled by pneumoconiosis. Shuck requested and was granted a full hearing on his claim before the ALJ.

Because Shuck's claim was filed in 1978, the Secretary of Labor's

"interim regulations" apply.[1] Section 203(a) provides that a claimant who engaged in coal-mine employment for at least 10 years is entitled to an "interim presumption" of eligibility for disability benefits if he meets one of four medical requirements: (1) a chest x-ray establishes the presence of pneumoconiosis;[2] (2) ventilatory studies establish the presence of any respiratory or pulmonary disease of a specified severity; (3) blood gas studies demonstrate an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishes a totally disabling respiratory impairment. 20 C.F.R. § 727.203(a)(1)-(4). Section 203(b) provides that "all relevant medical evidence shall be considered" in the adjudication of a claim, and that the interim presumption is rebutted if the evidence establishes: (1) that the claimant is doing his usual or comparable work; (2) that he is capable of doing such work; (3) that his disability did not arise, even in part, out of coal-mine employment; or (4) that he does not have pneumoconiosis. 20 C.F.R. § 727.203(b)(1)-(4). Under 20 C.F.R. Part 727, a miner who engaged in coal mine employment for at least ten years, as did Shuck, will be presumed to be totally disabled due to pneumoconiosis if he can show a chest roentgenogram (x-ray), biopsy, or autopsy establishing the existence of pneumoconiosis. *See* 20 C.F.R. § 727.203(a)(1). If that medical requirement can be shown, the burden switches to the employer to rebut the presumption of total disability by showing that "the evidence establishes that the total disability . . . of the miner did not arise in whole or in part out of coal mine employment; or the evidence establishes that the miner does not, or did not, have pneumoconiosis." 20 C.F.R. § 727.203(b)(3)-(4). The party bearing the burden of proof under the applicable presumption must meet that burden by a preponderance of the evidence. *Mullins Coal Co. v. Director*, 484 U.S. 135, 156-58 (1987).

---

[1]The interim regulations apply to claims filed between July 1, 1973, and April 1, 1980 and are located at 20 C.F.R. Part 727. *See Pendleton v. Director*, 882 F.2d 101, 103 (4th Cir. 1989). The permanent regulations apply to all claims filed after March 31, 1980 and are located at 20 C.F.R. Part 718.

[2]Pneumoconiosis, or "black lung disease" is a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 727.202.

On September 25, 1991, the ALJ found that Shuck failed to establish invocation of the interim presumption of pneumoconiosis under § 727.203(a)(1), (2), and (4). The Benefits Review Board affirmed the ALJ's findings as to (a)(2) and (4), but it vacated the ALJ's findings as to (a)(1) and remanded the case because the ALJ accorded greater weight to the most recent x-ray interpretations.[3] The Benefits Review Board directed the ALJ to reweigh the x-ray evidence in light of *Adkins v. Director*, 958 F.2d 49, 52 (4th Cir. 1992) (holding that more recent x-rays that are read as negative for pneumoconiosis should not be given greater weight than earlier x-rays simply by virtue of their chronology).

The sole issue on remand was whether the presence of pneumoconiosis had been established pursuant to 20 C.F.R. § 727.203(a)(1). The ALJ re-weighed the conflicting x-rays and decided to give more deference to the x-rays that were taken by physicians who were qualified both as B-readers[4] and as Board-certified radiologists. There were six dually-qualified negative readings and only one dually-qualified positive reading. In addition to noting that the quantity of negative x-

---

[3]Shuck challenges only the weighing of the evidence involving the x-rays under § 727.203(a)(1) and not the Benefit Review Board's initial affirmance of the ALJ's decision to deny benefits with respect to (a)(2) and (a)(4). Accordingly, we need not address whether *Island Creek Coal Company v. Compton*, 211 F.3d 203 (4th Cir. 2000), applies to 20 C.F.R. § 727, and, if so, whether the Benefits Review Board's severance of § 727.203(a)(2) & (a)(4) from (a)(1) in its initial remand to the ALJ comported with *Compton*'s directive to weigh all relevant medical evidence together. *See Compton*, 211 F.3d at 211. We note, however, that the Supreme Court has held that the statutory requirement to weigh all relevant evidence, *see* 30 U.S.C.A. § 923(b), is satisfied in § 727.203 at the rebuttal stage and, therefore, is not required to be satisfied at the invocation stage. *Mullins Coal Co. v. Director*, 484 U.S. 135, 149 (1987). In this respect, the § 727 regulations differ from the § 718 regulations, which were at issue in *Compton*. *See Compton*, 211 F.3d at 208-09.

[4]A "B"-reader is a physician who has completed a course and passed a proficiency examination conducted by the National Institute for Occupational Safety and Health for reading pneumoconiosis on x-ray films. *See Stapleton v. Westmoreland Coal Co.*, 785 F.2d 424, 428 n.2 (4th Cir. 1986), *rev'd on other grounds by Mullins Coal Co. v. Director*, 489 U.S. 135 (1987).

rays far outweighed the quantity of positive x-rays, the ALJ stated that there was insufficient corroboration of the one dually-qualified positive reading to support a finding of pneumoconiosis. Accordingly, on May 3, 1994, the ALJ found that the preponderance of the evidence did not support an interim presumption of pneumoconiosis under § 727.203(a)(1). As an alternative ground for denying benefits, the ALJ held that Consolidation had established proper rebuttal of total disability under § 727.203(b).

On September 23, 1999, the Benefits Review Board upheld the ALJ's determination that invocation of the interim presumption of pneumoconiosis was not established under § 727.203(a)(1) and, having found that invocation was not established, declined to address Shuck's argument pertaining to rebuttal. On November 15, 1999, Shuck filed a notice of appeal with this Court. He challenges the denial of black lung benefits, claiming that he introduced sufficient evidence to establish invocation of the interim presumption under § 727.203(a)(1).[5]

II.

A.

In reviewing decisions of the Benefits Review Board, we "review only for errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations." *Doss v. Director*, 53 F.3d 654, 658 (4th Cir. 1995) (internal quotation marks omitted). We must affirm the Benefits Review Board "if [the Board] properly determined that the ALJ's findings are supported by substantial evidence, keeping in mind that a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." *Id.* at 659 (internal quotation marks omitted); *see also Dehue Coal Co. v. Bal-*

---

[5]Shuck also appeals the ALJ's alternative ground for denying benefits — that Consolidation established proper rebuttal of total disability under § 727.203(b). The Benefits Review Board did not address this rationale in affirming the ALJ, so we are unable to resolve this issue under the *Chenery* doctrine even if we were so inclined. *See Securities and Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943).

*lard*, 65 F.3d 1189, 1195 (4th Cir. 1995) (noting that appellate court "must affirm the ALJ's factual findings and weighing of the medical evidence where these conclusions . . . are supported by substantial evidence"). "Substantial evidence" requires "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998) (internal quotation marks omitted); *see also Doss*, 53 F.3d at 659 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We "appl[y] the same standard of review, including substantial evidence as to fact findings, as does the [Benefits Review Board]" when reviewing the underlying decision of the ALJ. *Kellough v. Heckler*, 785 F.2d 1147, 1150 n.3 (4th Cir. 1986). A review for substantial evidence does not involve re-weighing conflicting evidence, making credibility determinations, or substituting our judgment for that of the ALJ. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

B.

Shuck argues that the ALJ improperly weighed conflicting x-ray interpretations. Because we believe that substantial evidence supports the ALJ's determination, we affirm the Benefits Review Board's decision that the ALJ properly acted within his discretion when the ALJ determined that Shuck did not establish an interim presumption of pneumoconiosis under § 727.203(a)(1).

Since 1974, approximately twelve x-ray films have been taken of Shuck's lungs.[6] Approximately twenty doctors have evaluated the various x-ray films and offered their conflicting interpretations as to the presence or absence of pneumoconiosis. Shuck argues that the ALJ was required to credit the opinions of doctors who read Shuck's x-rays as positive for pnuemoconiosis and to discredit the opinions of the physicians who ruled out the presence of pneumoconiosis or a disabling respiratory impairment. We disagree.

When, as in this case, the ALJ is presented with conflicting medical evidence and conflicting expert opinions, we recognize that "it is

---

[6]The most recent x-ray was taken on June 1, 1988.

the province of the ALJ to evaluate the physicians' opinions." *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211 (4th Cir. 2000). Of course, in evaluating such opinions and ultimately reaching its decision, the ALJ is required by statute to articulate his "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C.A. § 557(c)(3)(A) (West 1996). The ALJ complied with this obligation by expressly stating that he accorded more weight to those physicians who were dually-qualified "B"-readers and Board-certified radiologists. His decision to accord greatest weight to those physicians with superior qualifications in interpreting x-rays of pneumoconiosis was a rational means by which to differentiate between the quality of the x-ray interpretations presented. *See Adkins v. Director*, 958 F.2d 49, 52 (4th Cir. 1992) ("A primary method of evaluating the reliability of an expert's opinion is of course his expertise . . . .").

Of the twenty or so physicians who interpreted Shuck's x-rays, seven had dual qualifications. Among the dually-qualified readers, only one, Dr. Williams, found an x-ray to indicate the presence of pneumoconiosis. Importantly, the ALJ did not simply weigh the quantity of evidence to determine whether Shuck established an invocation of pneumoconiosis. *See Mullins Coal Co. v. Director*, 484 U.S. 135, 148 n.23 (1987) ("The ALJ's task is, of course, to weigh the quality, and not just the quantity, of the evidence, before determining whether the presumption has been invoked."). Instead, the ALJ relied upon the fact that Dr. Williams's positive x-ray interpretation lacked corroboration. Insofar as Dr. Williams was the only dually-qualified reader to interpret Shuck's x-ray to indicate pneumoconiosis, it was proper for the ALJ to discredit his interpretation for lack of corroboration. This is particularly true where the contrary position, that Shuck's x-ray was negative for pneumoconiosis, was corroborated by several other physicians. Accordingly, we believe that the ALJ acted rationally and within his discretion by crediting the reports of those dually-qualified physicians whose readings were sufficiently corroborated.

Shuck argues, however, that Dr. Williams's opinion was corroborated, in that three of the dually-qualified physicians interpreted Shuck's x-ray as demonstrating a profusion level of 0/1 but ultimately concluded that the x-ray was negative for pneumoconiosis. In light of

the readings of 0/1, Shuck argues that the ALJ erred by refusing to credit these readings as positive for minimal pneumoconiosis. If the ALJ had credited these readings as positive, Dr. Williams's finding would have been corroborated by other dually-qualified physicians, which in turn would render the ALJ's stated reason for concluding that Shuck did not suffer from qualifying pneumoconiosis insufficient.

In support of his position that a 0/1 reading must be treated as positive for minimal pneumoconiosis, Shuck points to *Grigg v. Director*, 28 F.3d 416 (4th Cir. 1994), and *Whicker v. United States Dep't of Labor*, 733 F.2d 346 (4th Cir. 1984), *overruled on other grounds by Mullins*, 484 U.S. 135. Shuck claims that in *Grigg* and *Whicker*, this Circuit promulgated rules establishing the proper method of diagnosing pneumoconiosis. Shuck further argues that these cases stand for the proposition that the ALJ must discredit medical opinions in which the physician finds no pneumoconiosis if that physician has submitted a reading of 0/1. Shuck's reliance upon *Grigg* and *Whicker* is misplaced.

In *Grigg*, this Court did not create a rule for diagnosing pneumoconiosis under 20 C.F.R. § 727.203(a)(1). To the contrary, *Grigg* did not address invocation; rather, it analyzed the rebuttal of the interim presumption pursuant to § 727.203(b)(3). In *Grigg*, the ALJ determined that the x-ray evidence was sufficient to establish the existence of pneumoconiosis pursuant to § 727.203(a)(1), a finding that was not in dispute. *See Grigg*, 28 F.3d at 418. The Department of Labor argued, however, that the ALJ erred by refusing to find that the presumption of disability was properly rebutted because Grigg's disability " 'did not arise in whole or in part out of [his] coal mine employment.'" *Id.* at 418 (quoting 20 C.F.R. § 727.203(b)(3)). To support a finding of no causal relationship between the disability and the coal mine employment, the Department of Labor argued that the ALJ should have relied upon a physician's opinion in which the physician based his finding of no pulmonary impairment on the premise that Grigg's x-ray did not demonstrate pneumoconiosis. Because the ALJ rejected the physician's underlying premise and found that Grigg's x-ray did demonstrate pneumoconiosis, we held that the ALJ should not then rely upon the physician's erroneously-based opinion to establish rebuttal.

Similarly, in *Whicker v. United States Dep't of Labor*, 733 F.2d 346 (4th Cir. 1984), *overruled on other grounds by Mullins*, 484 U.S. 135, the proper means of diagnosing pneumoconiosis to establish invocation of the interim presumption was not at issue. Instead, we addressed the issue of whether non-qualifying test results can be used as the principal or exclusive means of rebutting an interim presumption of pneumoconiosis, and we held that they could not. *See id.* at 349. We did not, as Shuck's argument suggests, hold that an x-ray reading of 0/1 constitutes a positive reading for pneumoconiosis. Accordingly, neither *Grigg* nor *Whicker* mandate that an ALJ must treat a 0/1 reading as positive for minimal pneumoconiosis. In fact, the relevant regulations provide that x-ray readings of 0/1 do not constitute evidence of pneumoconiosis. *See* 20 C.F.R. § 410.428 ("A chest roentgenogram (X-ray) classified under any of the foregoing classifications as Category 0, including subcategories 0/-, 0/0, or 0/1 under the UICC/Cincinnati (1968) Classification, is not accepted as evidence of pneumoconiosis."); 20 C.F.R. § 727.203(a)(1) (stating that 20 C.F.R. § 410.428 applies to determinations under § 727.203(a)(1)). As such, we believe the ALJ's decision was in accordance with the applicable law and regulations.

## III.

As the Benefits Review Board held, substantial evidence supports the ALJ's determination that Shuck failed to establish invocation of an interim presumption of pneumoconiosis under 20 C.F.R. § 727.203(a)(1). The ALJ properly considered the physicians' qualifications and the lack of corroboration when deciding among the physicians' conflicting x-ray interpretations. When substantial evidence supports the ALJ's finding, we will not undertake to re-weigh conflicting medical opinions. *See Doss v. Director*, 53 F.3d 654, 658 (4th Cir. 1995) (establishing that we review only for errors of law and defer with respect to findings of fact and weighing of evidence). Accordingly, the judgment of the Benefits Review Board is affirmed.

*AFFIRMED*