**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ISLAND CREEK COAL COMPANY,
Petitioner,

v.

DENNIS E. COMPTON; DIRECTOR,

No. 98-2051

OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order of the
Benefits Review Board.
(97-1477-BLA)

Argued: March 2, 2000

Decided: May 2, 2000

Before WILKINS and LUTTIG, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia,
sitting by designation.

_____

Vacated and remanded by published opinion. Judge Wilkins wrote the
opinion, in which Judge Luttig and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C.,
Charleston, West Virginia, for Island Creek. Michelle Seyman Ger-

dano, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Director. Perry Duane McDaniel, CRANDALL, PYLES, HAVILAND & TURNER, L.L.P., Charleston, West Virginia, for Compton. **ON BRIEF:** Henry L. Solano, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Director. George P. Surmaitis, CRANDALL, PYLES, HAVILAND & TURNER, L.L.P., Charleston, West Virginia, for Compton.

_____

**OPINION**

WILKINS, Circuit Judge:

Island Creek Coal Company (Island Creek or the company) petitions for review of a decision of the Benefits Review Board (the Board or BRB) affirming an award by an Administrative Law Judge (ALJ) of black lung benefits to Dennis E. Compton. See 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1999). For the reasons that follow, we vacate the order of the Board and remand with instructions for the Board to remand the action to an ALJ for further proceedings.

I.

Dennis Compton worked in the coal mines for over thirty years, primarily for Island Creek. For several years preceding his retirement in 1995, Compton operated a bulldozer on a mound of coal processing refuse; the ALJ characterized this work as "extremely dusty." J.A. 377. Compton smoked from the late 1950s until 1991 and resumed smoking in 1997. At times, Compton smoked up to one and one-half packs of cigarettes a day.

Compton filed this duplicate claim for black lung benefits on May 24, 1995.[1] The claim was denied initially, and an administrative hear-

_____

[1] Compton filed his first claim for black lung benefits in 1973; that claim was eventually denied. The instant claim is therefore a "duplicate" claim subject to denial absent proof of a material change in conditions.

ing was held. Both parties and the Director of the Office of Workers' Compensation Programs (the Director) submitted evidence at the hearing.

The ALJ first considered the x-ray evidence, which consisted of 17 chest x-rays that had been read a total of 59 times by 14 physicians. Only five of the readings were positive for pneumoconiosis. The ALJ concluded that Compton had "not established by a preponderance of chest x-ray evidence that he had pneumoconiosis."[2] J.A. 381.

The conflicting reports of six physicians were also submitted. Dr. Livia Cabauatan examined Compton in 1979 and concluded that he had asymptomatic chronic obstructive pulmonary disease (COPD) related to his coal dust exposure. Dr. Dominic Gaziano, who examined Compton in 1987, concluded that Compton had coal workers' pneumoconiosis and COPD. Dr. Oscar Carrillo examined Compton in 1995 and diagnosed Compton with severe obstructive pulmonary disease caused by exposure to coal dust and cigarette smoke. Dr. George Zaldivar examined Compton in 1996 and also reviewed Compton's medical records. Dr. Zaldivar determined that Compton did not have coal workers' pneumoconiosis, but rather that Compton suffered from emphysema caused by smoking and possibly a family history of asthma. Dr. James Castle did not examine Compton but reviewed his medical records and also concluded that Compton did not have coal workers' pneumoconiosis, but rather suffered from emphysema caused by smoking. Finally, Dr. Gregory Fino concluded after reviewing Compton's medical records that Compton did not have coal

_____

See 20 C.F.R. § 725.309 (1999). See generally Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358, 1362-65 (4th Cir. 1996) (en banc) (discussing standard for determining existence of a material change in conditions). The ALJ determined that Compton demonstrated a material change in conditions, and Island Creek has not challenged this determination.

[2] Two CT scans that had been reviewed by several physicians were also submitted. None of the CT scan evaluators found pneumoconiosis. The ALJ noted that the CT scan evidence supported "the chest x-ray determination of no radiographic evidence of pneumoconiosis," J.A. 381, but nevertheless accorded the scans little weight because they were not obtained for the purpose of diagnosing pneumoconiosis.

workers' pneumoconiosis but did have a moderate respiratory impairment due to smoking.

The ALJ credited the opinions of Drs. Gaziano and Carrillo, discredited the opinions of Drs. Fino, Zaldivar, and Castle,[3] and concluded that Compton had established the existence of pneumoconiosis by physician opinion evidence. The ALJ also determined that Compton satisfied the other elements necessary to a black lung claim, and awarded him benefits. The company appealed to the BRB, which affirmed the award.

II.

In order to obtain federal black lung benefits, a claimant must prove by a preponderance of the evidence that: "(1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 529 (4th Cir. 1998); see Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1195 (4th Cir. 1995); 20 C.F.R. §§ 718.201-.204 (1999). Island Creek argues that the ALJ and BRB erred in concluding that Compton satisfied the first and fourth elements of his claim.

We review an order of the BRB by "undertak[ing] an independent review of the record" to determine whether the ALJ's findings of fact were supported by substantial evidence. Dehue Coal, 65 F.3d at 1193. "Substantial evidence is more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). We review the legal conclusions of the BRB and the ALJ de novo. See Milburn Colliery, 138 F.3d at 528.

A.

Island Creek argues that the ALJ erred in determining that Comp-
_____
[3] The ALJ did not discuss Dr. Cabauatan's report and did not disclose his reason for omitting it from consideration.

ton established the existence of pneumoconiosis by a preponderance of the evidence because the ALJ erred in his method of weighing the evidence and in determining which physicians' opinions to credit. We address these contentions seriatim.

1.

20 C.F.R. § 718.202(a) provides that

> [a] finding of the existence of pneumoconiosis may be made as follows:
>
> (1) A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis....
>
> ....
>
> (2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis....
>
> (3) If the presumptions described in §§ 718.304, 718.305 or § 718.306 are applicable, it shall be presumed that the miner is or was suffering from pneumoconiosis.
>
> (4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

Island Creek contends that the ALJ erred because he merely weighed the evidence within each subsection, e.g., x-rays, to determine whether a preponderance of that type of evidence established pneumoconiosis. The company asserts that the proper method is to weigh the different types of evidence together to determine whether a preponderance of all of the evidence establishes the existence of pneumoconiosis.

The ALJ did in fact evaluate the evidence within subsections (a)(1) and (a)(4) of § 718.202 to determine whether either type of evidence established pneumoconiosis, but did not weigh the X-ray evidence with the medical opinion evidence.[4] The BRB approved of this practice. The Board ruled that as long as the evidence relevant to one subsection of § 718.202(a) supports a finding of pneumoconiosis, the rest of the evidence need not be considered.

We cannot endorse the Board's view. The statute governing the evidence required to establish a claim for black lung benefits states that "[i]n determining the validity of claims... all relevant evidence shall be considered." 30 U.S.C.A. § 923(b). The plain meaning of this statutory language is that all relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a). See Penn Allegheny Coal Co. v. Williams, 114 F.3d 22, 24-25 (3d Cir. 1997); see also Gray v. SLC Coal Co., 176 F.3d 382, 388-89 (6th Cir. 1999) (relying in part on the "all relevant evidence" language of 30 U.S.C.A. § 923(b) to reject argument that existence of complicated pneumoconiosis could be determined by weighing evidence within discrete categories of 30 U.S.C.A.§ 921(c)(3) rather than by weighing evidence from different categories together); Lester v. Director, OWCP, 993 F.2d 1143, 1145-46 (4th Cir. 1993) (rejecting argument that the categories within 30 U.S.C.A.§ 921(c)(3) establish mutually exclusive means of proving complicated pneumoconiosis such that evidence relevant to the various categories should not be weighed together, on the basis that such a construction would be counter to the mandate in 30 U.S.C.A. § 923(b) to consider "all relevant evidence").

_____

[4] Subsections (a)(2) and (a)(3) of§ 718.202 are not relevant to this appeal. There is no biopsy or autopsy evidence, and the presumptions described in subsection (a)(3) do not apply to Compton's case.

Further, weighing all of the relevant evidence together makes common sense. Otherwise, the existence of pneumoconiosis could be found even though the evidence as a whole clearly weighed against such a finding. For example, suppose x-ray evidence indicated that a miner had pneumoconiosis, but autopsy evidence established that the miner did not have any sort of lung disease caused by coal dust exposure. In such a situation, if each type of evidence were evaluated only within the particular subsection of § 718.202(a) to which it related, the x-ray evidence could support an award for benefits in spite of the fact that more probative evidence established that benefits were not due. See Griffith v. Director, OWCP, 49 F.3d 184, 187 (6th Cir. 1995) (noting that autopsy evidence is generally accorded greater weight than x-ray evidence).

Compton asserts that the plain language of § 718.202(a) supports the Board's view of how evidence of pneumoconiosis should be weighed. Compton points to the phrase "may also be made" in subsection (a)(4), and contends that this phrase indicates that subsection (a)(4) is an alternative method of proving pneumoconiosis.

We agree that § 718.202(a) lists alternatives; that much is clear from the plain language of the regulation.[5] However, there is nothing in the language of § 718.202(a) to support a conclusion that satisfaction of the requirements of one of the subsections conclusively proves the existence of pneumoconiosis even in the face of conflicting evi-

_____

[5] We disagree with Island Creek's contention that because the subsections are not separated by the word "or," the plain language of the regulation indicates that the various types of evidence should be weighed together. See Penn Allegheny Coal, 114 F.3d at 25. Even without the "or," it is clear that the regulation lists alternatives. Subsection (a)(1) states that x-ray evidence "may form the basis for a finding of the existence of pneumoconiosis." 20 C.F.R. § 718.202(a)(1). Subsection (a)(2) provides that biopsy or autopsy evidence "may be the basis for a finding of the existence of pneumoconiosis." 20 C.F.R.§ 718.202(a)(2). The regulation further notes that the existence of pneumoconiosis may be presumed in certain circumstances. See 20 C.F.R. § 718.202(a)(3). Finally, "[a] determination of the existence of pneumoconiosis may also be made" if a physician finds pneumoconiosis. 20 C.F.R. § 718.202(a)(4). Each subsection stands on its own; any one may support a finding of pneumoconiosis.

dence.**6** The regulation lists various bases which <u>may</u> be sufficient for a finding of pneumoconiosis. Thus, absent contrary evidence, evidence relevant to any one of the four subsections may establish pneumoconiosis. However, whether or not a particular piece or type of evidence actually <u>is</u> a sufficient basis for a finding of pneumoconiosis will depend on the evidence in each case. That the regulation allows a finding of pneumoconiosis based on x-ray findings simply does not mean that the regulation allows a finding of pneumoconiosis in every case in which x-rays indicate the presence of the disease. We read § 718.202(a) as giving claimants flexibility in proving their claims, but not as establishing mutually exclusive bases for demonstrating the existence of pneumoconiosis.**7**<u>Cf. Gray</u>, 176 F.3d at 389 (stating that the disjunctive in 30 U.S.C.A. § 921(c)(3)"serves to give miners flexibility in proving their claims, but does not establish three separate and independent irrebuttable presumptions").

_____

**6** Subsection (a)(3) refers to various regulations creating presumptions that a miner is totally disabled due to pneumoconiosis. If one of these presumptions applies, subsection (a)(3) creates a presumption that the miner has established the existence of pneumoconiosis. Although the presumptions referred to in subsection (a)(3) may arise before all relevant evidence has been considered, <u>see, e.g.</u>, 20 C.F.R. § 718.304, the presumption of the existence of pneumoconiosis created by subsection (a)(3) is rebuttable. Therefore, all evidence relevant to the issue of the existence of pneumoconiosis will be considered if the employer attempts to rebut the presumption.

**7** Compton argues that if we hold that all relevant evidence must be weighed together, wealthy coal companies will be able to essentially purchase outcomes by amassing evidence. First, to the extent that this is a danger, there is nothing about weighing evidence together that would worsen it; wealthy coal companies also could amass evidence within each subsection. More importantly, quantity of evidence is not dispositive of an issue. <u>See Sterling Smokeless Coal Co. v. Akers</u>, 131 F.3d 438, 440-41 (4th Cir. 1997); <u>see also Underwood v. Elkay Mining, Inc.</u>, 105 F.3d 946, 950 (4th Cir. 1997) (concluding that "unduly repetitious evidence" need not be received into the record by an ALJ (emphasis & internal quotation marks omitted)); <u>cf. id.</u> at 951 (stating that "[t]o the extent that ALJ's determine that a particular expert's opinion is not, in fact, independently based on the facts of a particular claim, but is instead influenced more by the identity of his or her employer, ALJ's have clear discretion to disregard such an expert's opinion as being of exceedingly low probative value").

8

The Director forwards a more nuanced position, contending that all evidence of medical or clinical pneumoconiosis should be weighed together, and all evidence of legal or statutory pneumoconiosis should be weighed together, but evidence of the former should not be weighed with evidence of the latter. That is, he asserts that the x-ray and CT scan evidence here should not be weighed against the physician opinion evidence, because these two sets of evidence "address different questions." Brief for the Federal Respondent at 21.

The Director is correct that the term "pneumoconiosis" has both a medical and a legal definition. See, e.g., Clinchfield Coal Co. v. Fuller, 180 F.3d 622, 625 (4th Cir. 1999); Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 821 (4th Cir. 1995). Medical pneumoconiosis is a particular disease of the lung generally characterized by certain opacities appearing on a chest x-ray. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 6-7 (1976); see also Hobbs, 45 F.3d at 821 ("Clinically, pneumoconiosis may be described in simple terms as a chronic lung disease marked by an overgrowth of connective tissue caused by the inhalation of certain dusts."). Legal pneumoconiosis is a much broader category of diseases, which includes but is not limited to medical, or "coal workers'," pneumoconiosis. See Fuller, 180 F.3d at 625; Hobbs, 45 F.3d at 821; see also 20 C.F.R. § 718.201 (including within legal definition of "pneumoconiosis""any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment"). Critically, "a medical diagnosis finding no coal workers' pneumoconiosis is not equivalent to a legal finding of no pneumoconiosis." Hobbs, 45 F.3d at 821. In that sense, then, the Director's point is well-taken: Evidence that does not establish medical pneumoconiosis, e.g., an x-ray read as negative for coal workers' pneumoconiosis, should not necessarily be treated as evidence weighing against a finding of legal pneumoconiosis.[8]

_____

[8] We encourage ALJs to be mindful of this distinction and of the different diagnostic purposes attending various pieces of evidence. Cf. Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1040-41 (6th Cir. 1993) (clarifying, in the context of weighing different types of evidence together under 20 C.F.R. § 718.204(c), that one type of evidence was not a "direct offset or contrary" to a different type of evidence because the two types of evidence related to different sorts of pulmonary impairment (internal quotation marks omitted)).

9

We nevertheless reject the Director's position because it is not a reasonable interpretation of either the Act or the regulation. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984) (holding that agency interpretation of statute is entitled to deference if it is "based on a permissible construction of the statute"); Lisa Lee Mines, 86 F.3d at 1363 (deferring to Director's reasonable interpretation of regulation). First,§ 923(b) does not distinguish between medical and legal pneumoconiosis; it simply mandates that all evidence relevant to claims for black lung benefits "shall be considered." 30 U.S.C.A. § 923(b). And, although we recognize that there is a meaningful distinction between evidence of medical pneumoconiosis and evidence of legal pneumoconiosis, it cannot be said that evidence showing that a miner does not have medical pneumoconiosis is irrelevant to the question of whether the miner has established pneumoconiosis for purposes of a black lung claim.[9] Further, nothing in the text of the regulation supports his position.[10]

Accordingly, because the ALJ failed to weigh all of the evidence together as is required by 30 U.S.C.A. § 923(b), we vacate the order of the BRB affirming the ALJ's decision and remand the case to the BRB with instructions to remand the case to the ALJ. On remand the ALJ must weigh the x-ray evidence with the physicians' opinions to determine whether Compton has established the existence of pneumoconiosis by a preponderance of all of the evidence.

2.

Island Creek also argues that the ALJ erred in determining that

_____

[9] For example, if in a particular case there were conflicting evidence regarding whether the miner had coal workers' pneumoconiosis, and no other respiratory or pulmonary diagnosis had been made, then the evidence would be relevant not only to the question of whether the miner had medical pneumoconiosis, but also to the question of whether he had legal pneumoconiosis.

[10] In light of our conclusion that the Director's position is not a reasonable interpretation of either the statute or the regulation, we need not address Island Creek's argument that we should not defer to the Director's current position because it is inconsistent with his position in Penn Allegheny Coal Co. v. Williams, 114 F.3d 22 (3d Cir. 1997).

10

Compton established the existence of pneumoconiosis by a preponderance of the evidence because the ALJ erred in crediting the opinions of Drs. Gaziano and Carrillo and in discrediting the opinions of Drs. Zaldivar, Castle, and Fino. We agree that the ALJ committed certain errors in evaluating the medical opinions.

In reviewing this material, we note that it is the province of the ALJ to evaluate the physicians' opinions. "[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert." Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949 (4th Cir. 1997). The ALJ must examine the reasoning employed in a medical opinion in light of the objective material supporting that opinion, and also must take into account any contrary test results or diagnoses. See Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir. 1983).

Dr. Gaziano

The ALJ concluded that Dr. Gaziano's opinion was well documented and well reasoned. Island Creek asserts that this conclusion was erroneous because Dr. Gaziano's opinion was not well documented. We agree with Island Creek.

Dr. Gaziano concluded that Compton had coal workers' pneumoconiosis based solely on an x-ray taken in connection with Dr. Gaziano's examination of Compton. However, the ALJ determined that the x-ray evidence did not establish pneumoconiosis. Because the ALJ rejected the sole basis for Dr. Gaziano's pneumoconiosis diagnosis, the ALJ erred in crediting Dr. Gaziano's opinion.[11] See Sahara Coal Co. v. Fitts, 39 F.3d 781, 783 (7th Cir. 1994) (stating that a physician's opinion diagnosing pneumoconiosis based solely on discredited x-ray evidence "cannot be considered probative evidence that [the claimant] has pneumoconiosis").

_____

[11] Although Dr. Gaziano also concluded that Compton's pulmonary function tests showed "a moderate combined obstructive and restrictive ventilatory impairment," J.A. 79, he did not attribute this impairment to Compton's coal mine employment. Therefore, this is not a diagnosis of legal pneumoconiosis. See 30 U.S.C.A. § 902(b); 20 C.F.R. § 718.201.

11

Dr. Carrillo

The ALJ concluded that Dr. Carrillo's opinion was well documented and well reasoned. Island Creek asserts that this conclusion was also erroneous. We conclude that substantial evidence in the record supports the ALJ's conclusion that Dr. Carrillo's opinion was reasoned and sufficiently documented.

Dr. Carrillo based his diagnosis of pulmonary disease on Compton's history of exposure to coal dust and cigarette smoke, Compton's medical history and Dr. Carrillo's physical examination of Compton, and the results of a pulmonary function test.**12** Dr. Carrillo's opinion satisfies the requirement of the regulation that it be based on "objective medical evidence" insofar as Dr. Carrillo relied on Compton's medical history, a physical examination, and a pulmonary function test. 20 C.F.R. § 718.202(a)(4).

Also, although Dr. Carrillo did not offer any explanation for his conclusion that Compton's disease was partially caused by exposure to coal dust, the totality of his report indicates that he reached a "reasoned medical opinion." Id.; see Poole v. Freeman United Coal Mining Co., 897 F.2d 888, 893-94 (7th Cir. 1990) (upholding ALJ's reliance on a medical report that stated an opinion without providing an explanation in part because the report was based on an objective medical test, a physical examination of the miner, and information about the miner's symptoms and work and medical histories, although characterizing the unadorned report as "minimally sufficient"). An ALJ may choose to discredit an opinion that lacks a thorough explanation, but is not legally compelled to do so. See Milburn Colliery, 138 F.3d at 532 n.9. There are several factors that an ALJ must consider in determining the weight to accord a particular opinion, and the detail of the analysis in the opinion is just one of them. See Underwood, 105 F.3d at 951 (listing factors).

_____

**12** Although a radiologist read an x-ray taken in connection with Dr. Carrillo's examination of Compton as positive, Dr. Carrillo did not rely on the results of this x-ray in making his diagnosis.

Dr. Fino

The ALJ discredited Dr. Fino's opinion because he did not examine Compton and because Dr. Fino's statement that Compton showed improvement after using bronchodilators conflicted with the findings of another physician who had examined Compton. The other physician, Dr. Zaldivar, found no improvement after the use of bronchodilators.

An ALJ may not discredit a physician's opinion solely because the physician did not examine the claimant. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 441 (4th Cir. 1997). Although the ALJ noted that the two physicians reached different conclusions about the effect of bronchodilators, the only reason given by the ALJ for crediting Dr. Zaldivar's conclusion over Dr. Fino's is that Dr. Zaldivar examined Compton. Accordingly, the ALJ erred in discrediting Dr. Fino's opinion solely because he had not examined Compton.

Dr. Zaldivar

The ALJ discredited Dr. Zaldivar's opinion on the basis that he failed to consider pneumoconiosis as an additional cause of Compton's pulmonary problems. Island Creek contends that Dr. Zaldivar's opinion should not have been discredited.

We conclude that there is sufficient evidence in the record to support the ALJ's determination that Dr. Zaldivar failed to consider pneumoconiosis as an additional cause of Compton's pulmonary problems. In response to a deposition question regarding the bases for his conclusion that Compton did not have a pulmonary impairment related to his coal mine employment, Dr. Zaldivar stated, "[t]he fact that his pulmonary problem is not related to any dust condition ... [a]nd the emphysema certainly will not be aggravated by anything other than the smoking." J.A. 337-38. The first part of Dr. Zaldivar's response simply begs the question, and a fact finder would not be compelled to accept the second part of the response because it is conclusory and does not explain why coal dust exposure could not have caused or aggravated the emphysema. See Underwood, 105 F.3d at 951.

13

Dr. Castle

The ALJ discounted the opinion of Dr. Castle because Dr. Castle stated that Compton had little exposure to coal dust. Island Creek challenges this determination.

We conclude that there is substantial evidence in the record to support the ALJ's conclusion that Dr. Castle misunderstood the degree to which Compton had been exposed to coal dust. Dr. Castle stated that Compton "had limited coal dust exposure in his mining work since most of it was as a dozer operator above ground." J.A. 250. In contrast, the ALJ characterized Compton's work as "extremely dusty."[13] J.A. 377.

3.

In sum, we conclude that the BRB erred in affirming the ALJ's decision because the ALJ erred in failing to weigh all of the relevant evidence together and in crediting Dr. Gaziano's opinion and discrediting Dr. Fino's opinion. On remand, the ALJ should reconsider its decision in a manner consistent with this opinion.

B.

Island Creek also argues that the ALJ erred in determining that Compton established by a preponderance of the evidence that his total disability is due to pneumoconiosis because the ALJ improperly discredited the opinions of Drs. Fino, Zaldivar, and Castle on the issue of causation. The ALJ discredited the causation opinions of Drs. Fino, Zaldivar, and Castle because none of these doctors had diagnosed

_____

[13] We need not address Island Creek's other arguments that the ALJ erred in discrediting Drs. Zaldivar's and Castle's opinions in light of our conclusion that there was a sufficient factual basis to support one reason for discrediting each opinion.

Island Creek also contends that the ALJ failed to adequately consider the relative qualifications of the physicians whose reports were being considered under § 718.202(a)(4). We encourage the ALJ on remand to consider more explicitly the impact of the doctors' respective credentials. See Milburn Colliery, 138 F.3d at 536.

14

pneumoconiosis. We agree with Island Creek that the ALJ did not offer a sufficient reason for discrediting Dr. Fino's opinion, but conclude that the ALJ committed no error by discrediting the causation opinions of Drs. Zaldivar and Castle.

In Dehue Coal Co. v. Ballard, 65 F.3d 1189 (4th Cir. 1995), we held that an ALJ may credit a physician's opinion on the issue of causation, even though the physician had not diagnosed pneumoconiosis, provided that the opinion is not "premise[d] ... on an erroneous finding contrary to the ALJ's conclusion." Dehue Coal, 65 F.3d at 1195 (internal quotation marks omitted); see Hobbs, 45 F.3d at 821-22 (approving ALJ's decision to credit physicians' opinions on issue of causation when their diagnoses of no coal workers' pneumoconiosis were not inconsistent with ALJ's finding of legal pneumoconiosis).

Here, Dr. Zaldivar's and Dr. Castle's causation opinions were irreconcilable with the ALJ's findings. The reasons offered by the ALJ for discrediting Dr. Zaldivar's and Dr. Castle's opinions with regard to the existence of pneumoconiosis, which we affirmed above, go to the issue of causation. The ALJ discredited Dr. Zaldivar's opinion because he failed to consider pneumoconiosis as an additional cause of Compton's pulmonary problems. The ALJ discredited Dr. Castle's opinion because he misunderstood the extent to which Compton had been exposed to coal dust. In both instances, the shortcoming identified by the ALJ with regard to the physician's opinion regarding the existence of pneumoconiosis also undermined the physician's opinion regarding causation. Therefore, these causation opinions are in irreconcilable conflict with the ALJ's finding of the existence of pneumoconiosis, and it was not error for the ALJ to accord them little probative value.

In contrast, the reason the ALJ discredited Dr. Fino's opinion regarding the existence of pneumoconiosis had nothing to do with the causation issue; the ALJ discredited Dr. Fino's opinion because Dr. Fino had not examined Compton. We rejected the sufficiency of this reason above. Further, although Dr. Fino did not diagnose pneumoconiosis, he opined that even if Compton had coal workers' pneumoconiosis, he would still conclude that it was cigarette smoking, and not coal dust exposure, that caused Compton's disability. Therefore, Dr. Fino's opinion on causation was not "premise[d] ... on an errone-

15

ous finding contrary to the ALJ's conclusion." <u>Dehue Coal</u>, 65 F.3d at 1195 (internal quotation marks omitted). Accordingly, we conclude that the reason offered by the ALJ for discrediting Dr. Fino's causation opinion was insufficient. On remand, the ALJ should reconsider his decision to discredit Dr. Fino's opinion on the causation issue.

III.

Because the BRB erred in approving the ALJ's practice of weighing evidence as it related to each subsection of 20 C.F.R. § 718.202(a) rather than weighing all of the relevant evidence together, and in light of the other errors found in the record, we vacate the Board's decision and remand with instructions for the Board to remand Compton's case to an ALJ for further proceedings not inconsistent with this decision.

<u>VACATED AND REMANDED</u>

16