UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

STERLING SMOKELESS COAL
CORPORATION,

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
BOBBY BALLENGEE,

*Respondents.*

No. 02-1679

On Petition for Review of an Order
of the Benefits Review Board.
(01-0205-BLA)

Argued: June 5, 2003

Decided: August 21, 2003

Before NIEMEYER, WILLIAMS, and TRAXLER, Circuit Judges.

---

Petition for review granted and remanded by unpublished per curiam
opinion.

---

## COUNSEL

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG,
Washington, D.C., for Petitioner. William D. Turner, III, CRAN-
DALL, PYLES, HAVILAND & TURNER, L.L.P., Lewisburg, West
Virginia, for Respondent Ballengee. Barry H. Joyner, Office of the

Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director. **ON BRIEF:** Laura Metcoff Klaus, GREENBERG TRAURIG, Washington, D.C., for Petitioner. Eugene Scalia, Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

In this claim for benefits under the Black Lung Benefits Act, Sterling Smokeless Coal Corporation seeks review of the Benefits Review Board's determinations (1) that Sterling Smokeless is the operator responsible for any award of benefits to claimant Bobby Ray Ballengee and (2) that Ballengee is entitled to those benefits. We grant review on the first issue, do not reach the second, and remand for further proceedings consistent with this opinion.

I

Ballengee, the claimant, worked as a coal miner for over 20 years, working first for Sterling Smokeless from 1972 to 1981. Thereafter, he worked for several different coal companies, last working for Green Mountain Energy, Incorporated from August 1990 to September 1993. In total, Ballengee worked for ten coal companies as follows:

| Company | Date of Employment |
|---------|--------------------|
| Sterling Smokeless Coal Corp. | 1972-81 |
| PG&H, Inc. | 1982 |
| Consolidated Coal Co. | 1982 |

| | |
|---|---|
| Barrett Fuel Corp. | 1982 |
| Maben Energy Corp. | 1982-85 |
| Riteway Coal, Inc. | 1984-85 |
| Hendricks Mining, Inc. | 1986-87 |
| Hansford Smokeless Collieries, Inc. | 1987 |
| Stoney Coal Co. | 1987-90 |
| Green Mountain Energy, Inc. | 1990-93 |

Of these, six companies each employed Ballengee for less than one year: PG&H, Consolidated, Barrett, Riteway, Hendricks, and Hansford. But according to Ballengee, Maben Energy and the companies for whom he worked afterwards (Riteway, Hendricks, Hansford, Stoney Coal, and Green Mountain) were "all the same company, it just had different names."

After Ballengee quit working in 1993 on the advice of his doctors, he filed a claim for benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. § 901 *et seq.* To obtain benefits under that Act, he was required to prove that he had pneumoconiosis; that it arose out of his coal mine employment; that he had a totally disabling respiratory or pulmonary condition; and that pneumoconiosis was a contributing cause of his disability. *See Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207 (4th Cir. 2000); 20 C.F.R. §§ 718.201-.204. Because Ballengee failed to prove total disability due to pneumoconiosis, his claim was denied. Ballengee did not request a hearing or otherwise contest the decision.

Ballengee later filed a second or "duplicate" claim for benefits based allegedly on a material change in conditions. Green Mountain, Ballengee's most recent coal mine employer, was originally identified as the employer statutorily responsible for payment of Ballengee's benefits, but Green Mountain informed the administrative law judge ("ALJ") that it, along with its parent company Adventure Resources, Incorporated and several other companies also owned by Adventure Resources, had filed for bankruptcy in 1992 and that it was uncertain whether Green Mountain could meet its obligation to pay the benefits. While the bankruptcy court allowed the unsecured claim of the federal Black Lung Disability Trust Fund, which had been paying Ballengee's claims during the prolonged adjudication, other creditors' claims would exhaust any assets of the bankruptcy estate before the

Trust Fund could be compensated or any of Ballengee's benefits paid. And although Green Mountain had participated, as of 1989, in a self-insured black lung benefits trust authorized by the Department of Labor and run by Adventure Resources, funding the trust with $705,556, the assets of that program had been exhausted by November 1996.

Green Mountain accordingly was released from liability, and Sterling Smokeless was identified as the responsible operator. Upon that company's objections to the ALJ, the Director of the Office of Workers' Compensation Programs ("Director") was ordered to show cause for holding Sterling Smokeless liable, given that several other coal mine operators had more recently employed Ballengee. The Director responded that all of Ballengee's coal mine employers, other than Sterling Smokeless, either had filed for bankruptcy with insufficient assets to pay Ballengee's benefits or had employed Ballengee for periods less than one year and, pursuant to applicable regulations, could not be the responsible operator. The Director also argued that no successor operator could be identified, on the basis that "[t]o the best of the Director's knowledge . . . the assets of Adventure Resources and its affiliates and subsidiaries have been and are being sold by the bankruptcy trustee free and clear of such successor liability." As evidence, the Director provided documents that identified Adventure Resources, several subsidiaries (including Barrett, Maben Energy, Hendricks, Hansford, Stoney Coal, and Green Mountain), and its principal H. Paul Kizer as active in bankruptcy proceedings. The Director also provided proofs of claims it had filed in those proceedings that acknowledged the inadequate assets of the bankruptcy estate, bankruptcy court orders authorizing the sale free and clear of all real property of Adventure Resources, and a Westlaw database printout of the corporate structures of certain of Ballengee's employers identifying Kizer as the primary officer.

Summarizing the Director's evidence as "provid[ing] at most a rather hazy and a limited view of a very complex corporate structure and its financial situation," the ALJ dismissed Sterling Smokeless from the case. The ALJ explained:

> I am unable to conclude without resort to speculation that there are simply no assets sufficient to cover [Ballengee's]

benefits in the possession of any entity which either employed [Ballengee] for a cumulative period of not less than one year subsequent to his employment with Sterling Smokeless or which could be held liable as a successor operator.

With no other operator named, the ALJ held the Black Lung Disability Trust Fund responsible for continuation of Ballengee's benefit payments.

On appeal by the Director, the Benefits Review Board vacated the ALJ's decision and remanded. The Board stated:

[T]he Director met his burden of providing evidence sufficient to demonstrate that all employers subsequent to Sterling are either incapable of assuming liability for the payment of benefits or employed [Ballengee] for less than one year and do not otherwise satisfy the definition of a responsible operator.

\*     \*     \*

Concerning the issue of whether Hansford and Hendricks were successor operators capable of assuming liability for payment of benefits, the administrative law judge's conclusion that Hansford and Hendricks may possess assets with which to pay benefits is speculative, and thus, insufficient to support his inference that these companies could be held liable for benefits. Similarly, the record lacks evidence to bolster the administrative law judge's assumption that Hansford and Hendricks are successor operators to Green Mountain, Stoney or Maben [noting that Ballengee worked for Stoney Coal and Green Mountain after working for Hansford and Hendricks]. In contrast, the record contains evidence sufficient to support the Director's position that Hansford and Hendricks had filed for bankruptcy, and that the physical location of the mines where claimant worked for Hansford and Hendricks was different from the physical location of the mines where claimant worked when employed by Maben, Stoney, and Green Mountain.

The Board denied Sterling Smokeless' subsequent motion for reconsideration.

Bound by the Board's holding and presented with evidence of Sterling Smokeless' ability to pay, the ALJ issued a decision and order on September 29, 2000, that identified Sterling Smokeless as the responsible operator and considered the merits of Ballengee's claim. Awarding benefits, the ALJ found that Ballengee suffered from complicated pneumoconiosis, which qualified as a material change in conditions to permit his duplicate claim to proceed and, consequently, to invoke the irrebuttable presumption of total disability due to pneumoconiosis entitling him to benefits.

On Sterling Smokeless' appeal, the Board affirmed and subsequently denied the request for reconsideration.

On appeal before this court, Sterling Smokeless petitions for review of (1) its liability as responsible operator and (2) the merits of Ballengee's claim.

II

Sterling Smokeless' principal claim on appeal is that it is not the coal mine operator statutorily responsible for paying any award of benefits to Ballengee under the Black Lung Benefits Act. Among the various arguments it advances on this issue, it contends *first* that the Director breached his duty to ensure that Green Mountain's self-insurance program was sufficiently funded to pay benefits and, were it not for this failure, Green Mountain would be the responsible operator because it employed Ballengee more recently than Sterling Smokeless. As support for imposing liability on the Black Lung Disability Trust Fund in this instance, Sterling Smokeless relies on the principle embodied in 20 C.F.R. § 725.495(a)(4) (2001), conceded to be a new regulation not controlling in this case, *see id.* § 725.2(c), which provides that the Trust Fund will assume liability where the Department of Labor has authorized self-insurance but at an inadequate level. *Second*, Sterling Smokeless contends that the Director failed to satisfy his obligation to investigate sufficiently whether Ballengee's employers other than Sterling Smokeless had the ability or responsibility to pay, arguing that liability does not attach to Sterling

Smokeless if any of Ballengee's more recent employers qualify as the responsible operator. *Third*, Sterling Smokeless contends that the officers of Green Mountain and Adventure Resources' other affiliates failed to fund adequately the self-insurance program and, as a consequence, are personally obligated to pay any benefits due to Ballengee that their companies are unable to pay. *Finally*, Sterling Smokeless claims that it should be excused from liability on due process grounds.

Ballengee's claim for benefits is governed by the Black Lung Benefits Act. That Act imposes liability on the coal industry for the payment of black lung benefits, and for claimants who worked as coal miners beyond January 1, 1970, the Act places liability on the individual "responsible operator" — the coal mine operator that most recently employed the claimant for periods of employment of not less than one year. *See* 20 C.F.R. § 725.490(a) (2001); *id.* § 725.493(a)(1) (1999).[1] But if that operator is "[in]capable of assuming its liability for the payment of continuing benefits," *see id.* § 725.492(a)(4), and there is no "successor operator" liable for the payment of benefits, *see id.* § 725.493(a)(2), then the next most recent employer satisfying the definition "shall be considered" the responsible operator, *see id.* § 725.493(a)(4). "[I]f no responsible operator can be identified, benefits are paid by the Black Lung Disability Trust Fund." *Id.* § 725.1(d) (2001). And under the regulations applicable to this case, *it is the Director's burden* to develop evidence sufficient to support the conclusion that a potentially responsible operator is incapable of assuming liability and consequently does not qualify as the responsible operator. *See Director, OWCP v. Trace Fork Coal Co.*, 67 F.3d 503, 507 (4th Cir. 1995) (holding that the applicable regulations "give the Director, not [the designated responsible operator], the power to develop evidence on [the responsible operator] issue"); *see also id.* at 506-07 (stating that "[w]e review the factfindings of the ALJ to see if they are based on substantial evidence in the record considered as a whole").[2]

---

[1] Because this claim was filed before January 19, 2001, the version of §§ 725.491-495 set forth in 20 C.F.R., parts 500 to end, edition revised as of April 1, 1999, apply. *See* 20 C.F.R. § 725.2(c) (2001).

[2] We note that while the current version of regulations governing the responsible operator issue place on the designated responsible operator

We conclude in this case that the Director has failed to present sufficient evidence to identify Sterling Smokeless as the proper responsible operator. *See Trace Fork*, 67 F.3d at 505, 507 (agreeing with the Benefits Review Board and the ALJ that the Director's evidence of a more recent employer's dissolution was insufficient to establish inability to pay benefits). Ballengee testified that Maben Energy and the companies for whom he worked afterwards were "all the same company, it just had different names." This indicates that some or all may have been successors to one another. *See* 20 C.F.R. § 725.493(a)(2)(i) (1999) (defining "successor operator" as one who receives a "mine or mines or substantially all of the assets thereof" from another operator). And the Director's evidence supports this contention that some of Ballengee's employers were successors to one another. The Director submitted information obtained from a Westlaw database — from 1998 — that listed Maben Energy and Stoney Coal as active corporations and at the same address. And the Director's exhibits on Ballengee's employment history list Barrett, Maben Energy, Hendricks, Hansford, Stoney Coal, and Green Mountain as sharing the same address and even the same payroll manager. While the Board was correct to note that Ballengee was assigned to several mines identified by different numbers,[3] it is no more speculative to assume from this evidence that the mines were at physically different locations than it is to assume that they were the same mine or mines but renumbered by a successor operator. Acknowledging the different numbers does not answer the lurking concern that a later employer of Ballengee may have succeeded to the assets of a prior employer of Ballengee. This is especially true given the extensive structure of Adventure Resources and its affiliates, once touted as "the

---

the burden to prove that "it is not the potentially liable operator that most recently employed the miner," 20 C.F.R. § 725.495(c)(2) (2001), those regulations apply only to claims filed after January 19, 2001, *see id.* § 725.2(c). Because the claim here was filed prior to that date, the applicable regulations are contained in the April 1, 1999, version of 20 C.F.R. §§ 725.491-495, *see id.*, and are subject to the burden of proof identified in *Trace Fork*.

[3]The records indicate that Ballengee worked as a coal miner at the following mines: mine #3 at Barrett; mines #5 and #8 at Maben Energy; mine #3 at Hendricks; mine #3 at Hansford; mines #5, #7, and #8 at Stoney Coal; and mines #6 and #7 at Green Mountain.

largest independent coal producer in West Virginia and the 49th largest independent coal producer in the United States." *Adventure Resources, Inc. v. Holland*, 193 B.R. 787, 791 (S.D. W.V. 1996) (internal quotation marks omitted), *aff'd in part & rev'd in part on other grounds*, 137 F.3d 786 (4th Cir. 1998).

As to ability to pay, not all of Adventure Resources' affiliates filed for bankruptcy. Although the Director indicated that Barrett, Maben Energy, Hendricks, Hansford, Stoney Coal, and Green Mountain had all filed bankruptcy proceedings, that information — contained in a letter from Adventure Resources — does not satisfy the Director's burden. Indeed, the bankruptcy action (a liquidation proceeding) identifies as bankrupt only four of the companies for whom Ballengee worked and notably missing are Hendricks and Hansford. *See Adventure Resources, Inc. v. Holland*, 137 F.3d 786 (4th Cir. 1998) (listing Barrett, Maben Energy, Stoney Coal, and Green Mountain among the debtors in bankruptcy). Indeed, the bankruptcy court noted that at least eight affiliates, although participating in the bankruptcy action, had not themselves filed for bankruptcy. *See Adventure Resources*, 193 B.R. at 791 n.5.

From all of this, we conclude that the Board had insufficient evidence to identify Sterling Smokeless as the responsible operator because the evidence in the record is insufficient to show that all of Ballengee's employers, subsequent to Sterling Smokeless, are unqualified to assume liability as the responsible operator. Accordingly, we remand this case for the development of further evidence on the ability of Ballengee's more recent employers to pay. Because of this remand, we need not address Sterling Smokeless' other arguments on the responsible operator issue.

Given our conclusion on the responsible operator issue, we also refrain from ruling on the sufficiency of the evidence either to establish a material change in conditions pursuant to 20 C.F.R. § 725.309(c) (1999) to permit the duplicate claim to proceed or to establish complicated pneumoconiosis pursuant to 20 C.F.R. § 718.304 (2000) to entitle Ballengee to benefits. In the event that an employer other than Sterling Smokeless is designated Ballengee's responsible operator, that employer should have the opportunity to dispute Ballengee's claim on the merits.

Accordingly, we grant Sterling Smokeless' petition for review of the decision of the Benefits Review Board on the responsible operator issue and remand for further proceedings consistent with this opinion.

*THE PETITION FOR REVIEW IS*
*GRANTED AND THE CASE REMANDED*