UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BEVERLY J. CHAMBERS, Widow of
Raymond Chambers,

                    *Petitioner,*

         v.

OLD HICKORY COAL COMPANY; WEST
VIRGINIA COAL WORKERS'
PNEUMOCONIOSIS FUND,
INCORPORATED; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

                    *Respondents.*

⎫
⎪
⎪
⎪
⎪
⎬  No. 02-1671
⎪
⎪
⎪
⎪
⎭

On Petition for Review of an Order of the
Benefits Review Board.
(01-0764-BLA)

Argued: April 4, 2003

Decided: June 20, 2003

Before KING, Circuit Judge, HAMILTON, Senior Circuit Judge,
and Robert E. PAYNE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Leonard Joseph Stayton, Inez, Kentucky, for Petitioner.
Robert Weinberger, Employment Programs Litigation Unit, Charles-
ton, West Virginia, for Respondents.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Beverly Chambers petitions for review of a decision by the United States Department of Labor's Benefits Review Board (the Board) denying an award by an Administrative Law Judge (ALJ) for black lung survivor's benefits under the Black Lung Benefits Act (the Act), 30 U.S.C. §§ 901-945. For the reasons stated below, we vacate the Board's decision and remand with instructions to the Board to remand the case to an ALJ for further proceedings consistent with this opinion.

I

Raymond Chambers (Chambers) worked for at least twenty years as a coal miner. For approximately forty years of his life, Chambers smoked one pack of unfiltered cigarettes per day. He died in August 1996 and, according to his death certificate, the cause of his death was cardiopulmonary arrest/failure due to massive myocardial infarction and cardiac arrhythmia.

On October 5, 1998, Chambers' widow, Beverly Chambers (Mrs. Chambers), filed a claim for black lung survivor's benefits under the Act. The United States Department of Labor (DOL) denied the claim on March 10, 1999 because the evidence did not establish that Chambers' death was due to pneumoconiosis. Mrs. Chambers appealed the denial and the case was referred to the Office of Administrative Law Judges (OALJ) on July 21, 1999. The case was remanded to the District Director on September 30, 1999 to determine the proper responsible operator and insurance carrier. The District Director named Old Hickory Coal Company (Old Hickory) and the West Virginia Coal-Workers' Pneumoconiosis Fund as the responsible operator and insurance carrier, respectively. The case was then referred to the OALJ for a hearing, which was conducted by an ALJ on October 18, 2000. On

June 13, 2001, the ALJ issued his decision denying Mrs. Chambers' claim for black lung survivor's benefits under the Act.

On the issue of whether Chambers had pneumoconiosis, the ALJ first considered the autopsy and biopsy evidence. In the autopsy report prepared by Dr. Raul Gagucas (Dr. Gagucas), Dr. Gagucas diagnosed Chambers with bronchiolitis obliterans-organizing pneumonia, moderate coal-workers' pneumoconiosis, diffuse moderate emphysema, and pleural adhesions. Dr. Gagucas opined that coal workers' pneumoconiosis could have caused a mild pulmonary deficit.

Dr. Bobby Caldwell (Dr. Caldwell), a board-certified pathologist, performed a biopsy on Chambers' lung on March 11, 1996 and diagnosed Chambers as having squamous metaplasia of the respiratory epithelium and left lower lobe brushing.

Dr. Echols Hansbarger (Dr. Hansbarger), a board-certified pathologist, and Dr. Francis Green (Dr. Green), another board-certified pathologist, reviewed both the autopsy and biopsy evidence contained in the record. In his July 31, 2000 report, Dr. Hansbarger diagnosed Chambers as having: (1) bilateral organizing pneumonia-bronchiolitis obliterans; (2) bullous centrilobular emphysema of the lung; (3) mild focal anthracotic pigmentation of the lung; and (4) anthracitic pigmentation of the bronchial lymph nodes. Dr. Hansbarger opined that Chambers did not have coal-workers' pneumoconiosis or any other occupationally-acquired coal dust-related disease. He also opined that: (1) Chambers died from atherosclerotic coronary heart disease; and (2) pneumoconiosis could not have contributed to Chambers' death or hastened his death. In his August 24, 2000 report, Dr. Green opined that Chambers had mild, simple coal workers' pneumoconiosis. Dr. Green also opined that: (1) Chambers' death was more likely to have resulted from a respiratory condition; and (2) Chambers' pneumoconiosis significantly contributed to his death.

The conflicting reports of several physicians were also placed before the ALJ. Dr. Robert Crisalli (Dr. Crisalli), a board-certified pulmonologist, examined Chambers on March 11, 1996 and issued a report in which he diagnosed Chambers as having diffuse hyperemia and edema. Dr. Scott Miller (Dr. Miller) wrote two letters in which

he assessed Chambers' condition. In the first letter, dated March 15, 1996, Dr. Miller diagnosed Chambers as having atherosclerotic coronary artery disease with angina, valvular heart disease, lung lesions, hypertension, and chronic obstructive pulmonary disease (COPD). In the second letter, dated June 26, 1996, Dr. Miller diagnosed Chambers as suffering from severe arteriosclerotic coronary artery disease and severe COPD.

Dr. Robert Atkins (Dr. Atkins), Chambers' treating physician, submitted several treatment records at the request of the DOL. With respect to the period of July 2, 1992 through July 23, 1996, Dr. Atkins assessed Chambers as having pneumonia, congestive heart failure, bronchitis, ischemic heart disease, COPD, and pneumoconiosis. With respect to the period of June 30, 1988 through July 23, 1996, Dr. Atkins concluded that Chambers was suffering from COPD and mild pneumoconiosis. In a letter dated May 5, 1999, Dr. Atkins stated that Chambers died due to multiple causes including cardiac failure and that pneumoconiosis was a contributing cause of death.

Dr. Mohamed Ranavaya (Dr. Ranavaya), who is a B-reader and is board certified in internal medicine, completed a medical consultant case review on March 9, 1999 in which he concluded that Chambers suffered from pneumoconiosis. Dr. Ranavaya also concluded that: (1) Chambers was not totally disabled by pneumoconiosis prior to his death; (2) Chambers' death was not due to pneumoconiosis; (3) pneumoconiosis was not a substantial contributing cause leading to Chambers' death; (4) Chambers' death was not caused by complications of pneumoconiosis; and (5) Chambers did not have complicated pneumoconiosis.

In his decision, the ALJ found that the autopsy and biopsy evidence was in equipoise and therefore Mrs. Chambers failed to establish the existence of pneumoconiosis by a preponderance of the autopsy and biopsy evidence. The ALJ further found that Mrs. Chambers established the existence of pneumoconiosis by a preponderance of the medical opinion evidence. Opining that the autopsy and biopsy evidence considered together was more "reliable" than the medical opinion evidence, the ALJ denied Mrs. Chambers' claim for black lung survivor's benefits under the Act.[1] Mrs. Chambers appealed the ALJ's

---

[1]The ALJ also found that Chambers did not have pneumoconiosis arising out of coal mine employment and that Chambers' death was not due

decision to the Board, which, in a 2-1 decision, affirmed the ALJ's decision. Mrs. Chambers filed a timely petition for review.

## II

To receive black lung benefits as a surviving spouse of a miner, the surviving spouse must prove: (1) the miner had pneumoconiosis; (2) the miner's pneumoconiosis arose out of coal mine employment; and (3) the miner's death was due to pneumoconiosis. 20 C.F.R. § 718.205(a).[2] The surviving spouse has the burden of establishing these elements by a preponderance of the evidence. *United States Steel Mining Co., Inc. v. Director, OWCP*, 187 F.3d 384, 388 (4th Cir. 1999).

We review an order of the Board "undertak[ing] an independent review of the record" to determine whether the ALJ's findings of fact are supported by substantial evidence. *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). "Substantial evidence is more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). We review the legal conclusions of the Board and the ALJ *de novo*. *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998).

The Act's regulations provide four ways in which a miner or surviving spouse can establish that the miner had pneumoconiosis. 20 C.F.R. § 718.202(a)(1)-(4). In relevant part, the regulations provide that:

> (a) A finding of the existence of pneumoconiosis may be made as follows:
>
> (1) A chest X-ray conducted and classified in

---

to pneumoconiosis. These findings were premised on the finding that Chambers did not have pneumoconiosis.

[2]The parties agree that the Part 718 regulations apply to Mrs. Chambers' claim for black lung survivor's benefits.

> accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. . . .
>
> (2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis. . . .
>
> (3) If the presumptions described in §§ 718.304, 718.305 or § 718.306 are applicable, it shall be presumed that the miner is or was suffering from pneumoconiosis.
>
> (4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. . . .

20 C.F.R. § 718.202(a)(1)-(4).

In *Island Creek Coal Company v. Compton*, 211 F.3d 203 (4th Cir. 2000), we were presented with the issue of whether ALJs could consider evidence adduced under each of the four subsections of 20 C.F.R. § 718.202(a) in the disjunctive. We rejected the Board's argument that, if the evidence relevant to one subsection supported a finding of pneumoconiosis, other evidence bearing on a different subsection could be ignored. Instead, we decided that the proper method is to weigh the different types of evidence together to determine whether a preponderance of all of the evidence establishes the existence of pneumoconiosis. *Compton*, 211 F.3d at 208-09; *id.* at 208 (concluding that the "plain meaning" of 30 U.S.C. § 923(b) requires the weighing of all relevant evidence together "rather than merely within discrete subsections of § 718.202(a)").

In this case, the ALJ arguably weighed the different types of evidence as required by *Compton*. The ALJ said that he weighed the autopsy and biopsy evidence against the medical opinion evidence.[3]

---

[3]The presumptions described in 20 C.F.R. § 718.202(a)(3) do not apply to Chambers, thus, they are not relevant to this appeal. In addition,

After weighing this evidence, the ALJ concluded that the autopsy and biopsy evidence considered together was more persuasive on the question of whether Chambers had pneumoconiosis. We find the manner in which the ALJ weighed the evidence under *Compton* flawed in two respects.

First, in *Compton*, we recognized that evidence showing that a miner does not have medical pneumoconiosis is not dispositive of whether a miner has established a black lung claim; rather, evidence showing that a miner does not have medical pneumoconiosis must be weighed together with the evidence establishing legal pneumoconiosis in determining whether the miner has established a black lung claim. *Compton*, 211 F.3d at 210 ("Evidence that does not establish medical pneumoconiosis . . . should not necessarily be treated as evidence weighing *against* a finding of legal pneumoconiosis."); *id.* at 210-11 n.8 & 9. Such an approach makes eminent sense because there is a difference between the medical definition and the broader legal definition of pneumoconiosis. *Compare id.* at 210 ("Medical pneumoconiosis is a particular disease generally characterized as certain opacities appearing on a chest x-ray. . . . Clinically, pneumoconiosis may be described in simple terms as a chronic lung disease marked by an overgrowth of connective tissue caused by the inhalation of certain dusts.") (citation and internal quotation marks omitted) *with id.* ("[L]egal definition of pneumoconiosis [includes] any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.") (citation and internal quotation marks omitted).

In this case, the ALJ did not specify whether the medical opinion evidence established medical or legal pneumoconiosis. The need for ALJs to make this distinction is critical to a proper weighing of the

there was chest x-ray evidence in the record, which the ALJ declined to consider. The Board found the ALJ's decision to decline to consider the chest x-ray to be error, but nevertheless harmless error because the chest x-ray evidence did not establish the existence of pneumoconiosis under 20 C.F.R. § 718.202(a)(1). Because the ALJ did not use the chest x-ray evidence when he conducted the requisite weighing under *Compton*, we cannot consider the chest x-ray evidence.

evidence under *Compton*. *Id.* at 210 & n.8. Indeed, at least two of the physicians (Drs. Atkins and Miller) found COPD, an ailment covered under the legal definition of pneumoconiosis but not under its medical definition. Considering that only one other physician (Dr. Ranavaya) supported the ALJ's 20 C.F.R. § 718.202(a)(4) finding, it is likely that the ALJ found the existence of legal pneumoconiosis. In our view, a finding of legal pneumoconiosis under 20 C.F.R. § 718.202(a)(4) is supported by substantial evidence in the record.[4] In the final analysis, however, the basis for the ALJ's 20 C.F.R. § 718.202(a)(4) finding is simply beside the point. Because the ALJ never explained why the autopsy and biopsy evidence, which related to the existence of medical pneumoconiosis, was more persuasive than the medical opinion evidence establishing legal pneumoconiosis, it cannot be said that the ALJ weighed all of the evidence together as *Compton* requires.

Second, as noted above, the ALJ found that Mrs. Chambers established the existence of pneumoconiosis by a preponderance of the medical opinion evidence under 20 C.F.R. § 718.202(a)(4). In view of this finding, which obviously tipped the scales in favor of a finding that Chambers had pneumoconiosis, as a matter of simple logic, it was error for the ALJ to conclude that the autopsy and biopsy evidence, which was in equipoise, tipped the scales in favor of a finding that Chambers did not have pneumoconiosis.

### III

Because the manner in which the ALJ weighed the evidence under *Compton* was flawed, we vacate the Board's decision and remand the case with instructions to the Board to remand the case to an ALJ for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[4]For this reason, we reject Old Hickory's argument that substantial evidence does not support the ALJ's 20 C.F.R. § 718.202(a)(4) finding.