SHEDD, Circuit Judge,
dissenting:
The Administrative Law Judge (“ALJ”), affirmed by the Benefits Review Board (“BRB”), denied Mrs. Collins’ claim for black lung survivor’s benefits based on two alternative, independent factual findings. *225 First, the ALJ found that Mrs. Collins failed to prove that Mr. Collins suffered from pneumoconiosis. In making this finding, the ALJ rejected Mrs. Collins’ assertion that Pond Creek Mining Company should be collaterally estopped by Mr. Collins’ black lung living miner determination from relitigating the question of whether Mr. Collins suffered from pneu-moconiosis. Second, the ALJ found that even assuming that Mr. Collins suffered from pneumoconiosis, Mrs. Collins nonetheless failed to prove that his death was due to pneumoconiosis. In my view, both of the ALJ’s factual findings are supported by substantial evidence, and either is independently dispositive of Mrs. Collins’ claim. Moreover, the ALJ’s decision not to apply collateral estoppel — an issue that relates only to the first of the two alternative factual findings — is correct under the circumstances of this case. Accordingly, I dissent from the majority’s decision to grant the petition for review.
I
We review Mrs. Collins’ claim to determine whether substantial evidence supports the ALJ’s factual findings and whether the legal conclusions of the BRB and the ALJ are rational and consistent with applicable law. Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 190 (4th Cir.2000). To succeed on her claim, Mrs. Collins bears the burden of proving by a preponderance of the evidence that (1) Mr. Collins suffered from pneumoconiosis; (2) the pneumoconiosis arose at least in part out of coal mine employment; and (3) Mr. Collins’ death was due to pneumoconiosis. Id. Generally, pursuant to 20 C.F.R. § 718.202(a), Mrs. Collins may establish the existence of pneumoconiosis by means of (1) chest x-rays, (2) biopsy or autopsy evidence, (3) invocation of the presumptions at 20 C.F.R. §§ 718.304-718.306, or (4) medical opinion evidence. She may establish that Mr. Collins’ death was due to pneumoconiosis by proving that pneu-moconiosis actually hastened his death. Sparks, 213 F.3d at 190 (citations omitted).
II
Evidence in the record indicates that Mr. Collins was a coal miner, as well as a pack-a-day cigarette smoker, for over 40 years. Approximately one year before his death in 1997, Mr. Collins’ heart began to fail. In September 1997, Mr. Collins went into full cardiopulmonary arrest; he was resuscitated and transported to the hospital, where he was placed on a ventilator. Mr. Collins remained in the hospital two weeks after his cardiac arrest. A day after being discharged from the hospital, Mr. Collins again suffered an acute cardiac arrest and died at home. No autopsy was performed.
Shortly thereafter, Mrs. Collins filed her claim for survivor’s benefits. Proper consideration of the issues involved in Mrs. Collins’ claim requires us to examine Mr. Collins’ claim for living miner benefits as well as our decision in Island Creek Coal Company v. Compton, 211 F.3d 203 (4th Cir.2000).
A.
In 1988, an ALJ awarded living miner benefits to Mr. Collins, finding that he suffered from pneumoconiosis. Considering the four methods by which a claimant may establish the existence of pneumoconi-osis, the ALJ concluded that Mr. Collins’ proof failed with respect to each of the first three methods. Specifically, although the ALJ recognized that there were differing opinions concerning the chest x-rays, he accorded greater weight to the opinions of two B-readers who read Mr. Collins’ x-rays and found no evidence of pneumoconi-osis. The ALJ then found that there was *226 no biopsy or autopsy evidence in the record and that the presumptions were not applicable.
The ALJ further found, however, that Mr. Collins established the presence of pneumoconiosis under the fourth method. Although one physician had opined that Mr. Collins did not suffer from pneumoco-niosis, the ALJ accorded greater weight to the opinions of two other physicians who had reached contrary conclusions. The ALJ’s stated analysis for finding pneumo-coniosis — i a, “through physician’s reports as provided in Section 718.202(a)(4),” J.A. 19 — suggests that he considered each method of proof individually without regard for the others. This decision was not appealed.
B.
In 2000, before Mrs. Collins’ claim for survivor’s benefits was decided, we decided Compton, which involved a claim for living miner’s benefits. The ALJ in Compton awarded benefits, finding (in pertinent part) that although the miner had not established pneumoconiosis by chest x-rays, he did establish pneumoconiosis by physician opinion evidence. There was no biopsy or autopsy evidence, and the presumptions described in § 718.202(a)(3) were not applicable.
The BRB affirmed the ALJ decision, and the company petitioned for review, arguing in part that the ALJ “erred in his method of weighing the evidence” concerning the issue of whether the miner suffered from pneumoconiosis. 211 F.3d at 208. Elaborating on this argument, the company contended that the ALJ “merely weighed the evidence within each subsection [of § 718.202(a) ] ... to determine whether a preponderance of that type of evidence established pneumoconiosis.” 211 F.3d at 208. Instead of this analysis, the company argued that “the proper method is to weigh the different types of evidence together to determine whether a preponderance of all of the evidence establishes the existence of pneumoconiosis.” Id.
We noted that the ALJ “did" in fact evaluate the evidence within subsections (a)(1) and (a)(4) of § 718.202 to determine whether either type of evidence established pneumoconiosis, but did not weigh the X-ray evidence with the medical opinion evidence.” 211 F.3d at 208. We further noted that the BRB “approved of this practice,” ruling “that as long as the evidence relevant to one subsection of § 718.202(a) supports a finding of pneumo-coniosis, the rest of the evidence need not be considered.” 211 F.3d at 208. We then expressly rejected the BRB’s analysis. Looking to 30 U.S.C. § 923(b), which governs the evidence required to establish a claim for black lung benefits, we held that “all relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a).” 211 F.3d at 208. Applying this holding, we vacated the award of benefits and remanded the case with instructions for the ALJ to “weigh the x-ray evidence with the physicians’ opinions to determine whether [the miner] established the existence of pneu-moconiosis by a preponderance of all of the evidence.” 211 F.3d at 211; see also Consolidation Coal Co. v. Held, 314 F.3d 184 (4th Cir.2002) (applying Compton and vacating award of benefits based on the ALJ’s failure to properly weigh all of the evidence together).
C.
In 2004, while Mrs. Collins’ claim was still pending, we decided Howard v. Valley Camp Coal Company, 94 Fed.Appx.170 (4th Cir.2004) (unpublished), which involved a claim for survivor benefits. Because the living miner in Howard had sue- *227 cessfully obtained benefits (in a pre-Compton claim), the miner’s surviving spouse asserted that collateral estoppel precluded the company from relitigating the issue of whether the miner suffered from pneumoconiosis. .Although the ALJ held that the company was collaterally es-topped, the BRB reversed based on the analytical change effected by Compton. As the BRB explained:
At the time of ... the miner’s claim, evidence sufficient to establish pneumo-coniosis under one of the four methods set out at 20 C.F.R. section 718.202(a)(l)-(4) obviated the need to do so under any of the other methods. See Dixon v. North Camp Coal Co., 8 BLR 1-344 (1985). However, subsequent to the issuance of the award of benefits in the miner’s claim, the Fourth Circuit held that although Section 718.202(a) enumerates four distinct methods of establishing pneumoconiosis, all types of relevant evidence must be weighed together to determine whether a miner suffers from the disease. See Island Creek Coal Co. v. Compton, 211 F.3d 203 (4th Cir.2000).... In light of the change in law enunciated in Compton, which overruled the Board’s holding in Dixon, the issue of whether the existence of pneumoconiosis has been -established pursuant to Section 718.202(a) ... is not identical to the one previously litigated and actually determined in the miner’s claim.
Howard, 94 Fed.Appx. at 172 (quoting the BRB).
We affirmed the BRB. Citing C.I.R. v. Sunnen, 333 U.S. 591, 600, 68 S.Ct. 715, 92 L.Ed. 898 (1948), for the proposition that “a judicial declaration intervening between ... two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable,” we concluded that the BRB “correctly determined that the change in interpretation of the regulations for proving pneumoco-niosis, which was effected by this court’s decision in Compton, was sufficiently significant to warrant refusal to apply issue preclusion based on a determination of pneumoconiosis made under the pre-Compton regime.” Howard, 94 Fed. Appx. at 173.
Ill
Against this backdrop, the ALJ denied Mrs. Collins’ claim for survivor’s benefits based on two alternative grounds: (1) her failure to prove that Mr. Collins suffered from pneumoconiosis and (2) her failure in any event to prove that his death was due to pneumoconiosis. The BRB affirmed on both grounds.
A.
Concerning the pneumoconiosis finding, the ALJ and the BRB first rejected Mrs. Collins’ contention that Pond Creek should be collaterally estopped by Mr. Collins’ living miner proceeding from relitigating whether he suffered from pneumoconiosis. Although both the ALJ and the BRB recognized that collateral estoppel is generally applicable in black lung survivor’s proceedings, they found the doctrine to be inapplicable because of our intervening decision in Compton and the BRB’s decision in Howard. As the BRB explained:
[Bjecause the change in the law in Compton affects the fact-finder’s weighing of the evidence, the issue [of pneu-moconiosis] is not identical to the one previously litigated.
[U]nder the facts of the present case the administrative law judge properly held that relitigation of the issue of the existence of pneumoconiosis was appropriate, since it was not clear that the origi *228 nal administrative law judge weighed all types of relevant evidence together consistent with Compton in adjudicating the miner’s claim.
J.A. 654, 675-76.
Having determined that collateral estop-pel did not apply, the ALJ then proceeded to consider whether Mrs. Collins proved by a preponderance of the evidence that Mr. Collins suffered from pneumoconiosis. After analyzing the x-ray evidence and medical opinion evidence, the ALJ found that the x-rays were inconclusive and that the better reasoned and documented medical opinions did not establish the existence of pneumoconiosis. Pursuant to Compton, the ALJ then weighed the inconclusive x-ray evidence together with the medical opinion evidence and found that Mrs. Collins failed to establish that Mr. Collins suffered from pneumoconiosis. As noted, the BRB affirmed this finding.
B.
Apart from the foregoing, the ALJ also considered whether Mrs. Collins proved by a preponderance of the evidence that Mr. Collins’ death was due to pneumoconiosis. In doing so, the ALJ expressly assumed for the purposes of the analysis that Mrs. Collins had established that Mr. Collins suffered from pneumoconiosis as a result of coal mine employment.[1] The ALJ then rejected as “cursory” the opinions of two doctors who found a causal link between Mr. Collins’ death and pneumoconiosis, finding instead that seven other doctors “provided better reasoned and documented opinions regarding the ‘death due to pneu-moconiosis’ issue.” J.A. 754. The ALJ further noted that “many of the foregoing physicians explained why their opinions regarding the absence of a role of pneumoco-niosis in [Mr. Collins’] death would not change, even assuming the presence of radiological evidence of the disease.” J.A. 754. Again, the BRB affirmed this finding.
IV
Mrs. Collins makes two principal arguments in support of her petition for review. First, she argues that the BRB and the ALJ erred by declining to collaterally es-top Pond Creek from contesting whether Mr. Collins suffered from pneumoconiosis. Second, she argues that even if collateral estoppel does not apply, the ALJ failed to give proper consideration to the medical evidence concerning the presence of pneu-moconiosis and whether pneumoconiosis caused Mr. Collins’ death.[2] Pond Creek urges us to deny the petition for review, arguing that the BRB and ALJ properly declined to apply collateral estoppel, and that the ALJ’s findings that Mrs. Collins failed to prove the existence of pneumoco-niosis or that Mr. Collins’ death was due to pneumoconiosis are supported by substantial evidence.
A.
In vacating the BRB decision and remanding this case, the majority primarily holds that Pond Creek is collaterally es-topped from contesting whether Mr. Col *229 lins suffered from pneumoconiosis. I disagree.
“The collateral estoppel doctrine is a judge-made rule,” Ritter v. Mount St. Mary’s College, 814 F.2d 986, 994 (4th Cir.1987), which provides that “once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case,” San Remo Hotel, L.P. v. City and County of San Francisco, Cal., 545 U.S. 323, 125 S.Ct. 2491, 2500 n. 16, 162 L.Ed.2d 315 (2005) (citation and quotation marks omitted). When, as here, a litigant attempts to use collateral estop-pel offensively, the determination of whether the doctrine should be applied is within the “broad discretion” of the trial court, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), but the court should proceed “cautiously,” and “the criteria for foreclosing a defendant from relitigating an issue or fact [should] be applied strictly,” In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326-27 (4th Cir.2004). “The burden is on the party asserting collateral estoppel to establish its predicates....” Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir.1982).
“Collateral estoppel is subject to exceptions when the circumstances dictate.” Bingaman v. Department of Treas., 127 F.3d 1431, 1437 (Fed.Cir.1997).[3] One example of this principle is that “a judicial declaration intervening between ... two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable.” Sunnen, 333 U.S. at 600, 68 S.Ct. 715; see also Montana v. United States, 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (noting that the “appropriate application of collateral estoppel” may necessitate an inquiry as to whether “controlling facts or legal principles have changed significantly” since the first case). Thus, collateral estoppel “will not preclude relitigation of the issue when there is a substantial difference in the procedures employed by the prior and current tribunals, [or] a material intervening change in governing law or the burden of persuasion.... ” Duvall v. Attorney Gen. of U.S., 436 F.3d 382, 391 (3d Cir.2006); see also Stanback v. C.I.R., 271 F.2d 514, 519 (4th Cir.1959) (“The doctrine of collateral estoppel has no place when the ground rales have been so extensively changed that a new question is presented.”).
In my view, the BRB correctly recognized that our decision in Compton constitutes the type of significant legal change that counsels against the application of collateral estoppel. Although the majority attempts to minimize Compton by stating that it “left the burden of proof in black lung proceedings unchanged,” this point misses the mark. It is true that Compton did not change the burden of proof in black lung proceedings, but it is equally true that Compton changed the analytical frameioork to be employed by the factfin-der who is considering whether the miner suffered from pneumoconiosis. Before Compton, ALJs were permitted to do exactly what the ALJ appears to have done with respect to Mr. Collins’ living miner claim: ie., make a finding of pneumoconio-sis based only on evidence relevant to any *230 one of the four subsections of § 718.202(a), without considering and weighing evidence relevant to the other subsections. In Compton, we expressly rejected this framework, holding instead that “all relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a).” 211 F.3d at 208.[4] For this reason, I disagree with the majority’s decision to apply collateral estoppel in this case.
Without the bar of collateral estoppel, the question of whether Mr. Collins suffered from pneumoconiosis for purposes of Mrs. Collins’ case is very much at issue and is subject to our substantial evidence review. I believe that substantial evidence supports the ALJ’s finding, made in accord with Compton, that Mr. Collins did not suffer from pneumoconiosis. Therefore, Mrs. Collins’ claim fails on this ground, and her petition for review should be denied.
B.
As noted, the ALJ found alternatively, based on the express assumption that Mr. Collins suffered from pneumoconiosis, that Mr. Collins’ death was not due to pneumo-coniosis. Because Mrs. Collins failed in my opinion to prove that Mr. Collins suffered from pneumoconiosis, it is not necessary for me to reach this issue. However, I note that the ALJ’s causation finding is supported by substantial evidence and also warrants denial of Mrs. Collins’ petition for review.[5]
V
Based on the foregoing, I dissent from the majority’s decision. I would deny the petition for review.

. Of course, in this posture, the ALJ effectively treated the claim as if Pond Creek was collaterally estopped from contesting whether Mr. Collins suffered from pneumoconiosis.

. As the majority notes, the Director agrees with Mrs. Collins on the collateral estoppel issue. However, the Director also points out that the ALJ’s "alternative finding" that Mr. Collins’ death was not due to pneumoconiosis "raises the question whether any error involving the judge’s pneumoconiosis finding is harmless.” Brief for the Federal Respondent, at 4 n. 1. The Director expressly refrained from addressing this issue. See id.

. Collateral estoppel is related to res judicata. Parklane Hosiery, 439 U.S. at 326, 99 S.Ct. 645. We have held that "[r]es judicata of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings. Application of the doctrine often serves a useful purpose in preventing relitigation of issues administratively determined, but practical reasons may exist for refusing to apply it.” Grose v. Cohen, 406 F.2d 823, 824-25 (4th Cir.1969) (citations omitted).

. Although Mrs. Collins and the Director assert that Compton actually did not effect a change in the law that existed in 1988, I am not persuaded that they are correct in that assertion, especially in light of the fact that it is contrary to the BRB’s interpretation of its own caselaw {e.g., as expressed in the Howard proceedings). Moreover, the majority implicitly appears to reject that assertion as well. See, e.g., Opinion, at 218 ("in Compton, we invalidated the BRB’s practice of allowing ALJs to find the existence of pneumoconiosis by looking exclusively at evidence within one of 20 C.F.R. § 718.202(a)’s four subsections, while ignoring contrary evidence belonging to one of the other three subsections”).

. The majority, relying on Scott v. Mason Coal Company, 289 F.3d 263 (4th Cir.2002), which did not involve collateral estoppel, deems it appropriate to remand this case to the BRB for further consideration of causation. Regardless of whether the majority is correct that Scott is applicable in a case such as this where a pneumoconiosis finding is premised solely on collateral estoppel rather than on an ALJ's factual finding, Scott does not affect my analysis. I believe that Mrs. Collins failed to prove the presence of pneumoconiosis by either collateral estoppel or the evidence in this case. Accordingly, in my view, there is no inconsistency in the ALJ’s alternate finding that Mrs. Collins failed to establish causation.